**Alfonso RODRIGUEZ, Jr., Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. CX–83–1140.**

Court of Appeals of Minnesota.

Feb. 29, 1984.

Review Denied May 15, 1984.

C. Paul Jones, State Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Wayne Swanson, Polk County Atty., Crookston, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

Rodriguez appeals from an order denying post-conviction relief from a conviction for attempted kidnapping and assault in the first degree. Appellant claims the trial court committed reversible error by permitting a previously hypnotized witness to testify about statements, portrait sketches, and photographic lineup identifications made by the witness prior to the hypnosis. We affirm.

## FACTS

Mrs. Ardyce Whalen went for a walk in her Crookston, Minnesota neighborhood on the evening of April 13, 1980. Shortly after 8:10 p.m., Mrs. Whalen noticed a car twenty feet ahead of her turn its headlights off. She continued walking on Elm Street and noticed a man standing on the sidewalk in front of a neighbor's house. As she approached, the man asked Mrs. Whalen for directions.

At this time, Mrs. Whalen stood three to four feet from the man. She noticed he was a young Mexican American and looked at his face to determine if he had been one of her students. The man's face was partially lit by a nearby streetlight. They spoke for about one minute when the man grabbed Mrs. Whalen's arm and said, "Get in the car or I'll kill you." Mrs. Whalen struck the man with her mittened hand. She felt a jab in her right side and screamed. She pulled loose from the man and started running home. At that point, Mrs. Whalen turned around to obtain the license number of the car. She failed, but she noticed the car was dark colored.

Mrs. Whalen ran home and discovered bleeding from her side and elbow. She called the police, who took her to the hospital for treatment of stab wounds. At the hospital the following morning, Mrs. Whalen described her attacker as a Spanish American with medium length black hair, stocky build, approximately 5'4" tall, smooth complexion, no facial hair, and in his early 20's. Mrs. Whalen, a portrait artist and teacher with 25 years experience, also provided the police with a rough portrait sketch of the man.

After drawing the sketch, police presented her with seven photographs for identification. Mrs. Whalen was unable to identify any of the men as her assailant. At 4:30 p.m. the same afternoon, a second photographic lineup was shown to Mrs. Whalen. She picked the appellant's picture as looking most like her assailant but believed the eyes of the man in a second photograph looked familiar.

On April 17, 1980, Mrs. Whalen assisted in preparing a composite of her assailant at the Grand Forks Police Department. She was not satisfied with the results. On April 21, 1980, Mrs. Whalen drew a second sketch of her assailant which closely resembled the appellant.

On April 25, 1980, Officer Qualley drove Mrs. Whalen to the Grand Forks Police Department to undergo hypnosis. Officer Qualley discussed the hypnosis with Mrs. Whalen during the drive, stating his expectations about the hypnosis. The hypnosis was conducted by a lay hypnotist and did not comply with the safeguards contained in *State v. Mack*, 292 N.W.2d 764, 771 n. 14 (Minn.1980). (Compliance with these safeguards was not possible because *Mack* was issued May 16, 1980).

During the videotaped hypnosis, Mrs. Whalen was shown the same eleven photographs shown to her at 4:30 P.M. on April 14, 1980. Mrs. Whalen positively identified appellant as her assailant for the first time during the hypnosis. She also confirmed her earlier descriptions of her assailant and provided additional information regarding his clothing. Mrs. Whalen was given a post-hypnotic suggestion to remember everything she had recalled under hypnosis.

At the Omnibus Hearing, Appellant moved to suppress all of Mrs. Whalen's identification testimony because of the hypnosis. The motion was denied. Appellant renewed the motion prior to trial. The trial judge denied the motion but ruled that Mrs. Whalen could not testify to identification made under hypnosis. The State agreed that there would be no reference to the hypnosis session during trial.

During trial, Mrs. Whalen identified appellant as her assailant. She reaffirmed her identification of the second photographic lineup. She testified that she was sure the second sketch of her assailant was accurate.

Michael Garcia, a friend of appellant's, testified that appellant was watching television at the Garcia home on the evening of April 13, 1980. Garcia testified that appellant left the Garcia home between 7:50 and 8:15 p.m. and returned about 20–25 minutes

later. When appellant finally left the Garcia home that evening, he asked Garcia to tell his parents that he had been at the Garcia home all evening.

Another witness, Beth Anderson, testified she saw appellant leave the Garcia home at 7:50 p.m. driving a green car. Officer Qualley questioned appellant in his home on April 14, 1980. At that time, appellant told Officer Qualley he had been at the Garcia home from 7:30 to 8:30 p.m. on April 13, 1980. The Garcia home was in the vicinity of the crime scene. On June 11, 1980, the jury returned a guilty verdict on charges of attempted kidnapping and assault in the first degree.

## ISSUE

Whether the trial court committed reversible error error by permitting a previously hypnotized witness to testify about statements, portrait sketches, and photographic lineup identifications made by the witness prior to the hypnosis.

## ANALYSIS

1. The standard governing the admissibility of evidence gained through hypnosis is contained in *State v. Mack*, 292 N.W.2d 764 (Minn.1980). In *Mack*, the Minnesota Supreme Court held testimony of a "previously hypnotized witness concerning the subject matter adduced at the pretrial hypnotic interview may not be admitted in a criminal proceeding." *Id.* at 772.

The *Mack* standard is interpreted to exclude from trial only those recollections that are recalled for the first time during the hypnosis. "[O]nly matters disclosed under hypnosis which have not been previously and unequivocally disclosed in prehypnotic statements are barred from being testified to at a criminal trial." *In re J.R.D.*, 342 N.W.2d 162 (Minn.App.1984); *see also State v. Blanchard*, 315 N.W.2d 427, 430–31 (Minn.1982); *State v. Koehler*, 312 N.W.2d 108, 110 (Minn.1981).[1]

In this case, Mrs. Whalen's description of her assailant under hypnosis did not differ from her prehypnotic descriptions, with the exception of information regarding her assailant's clothing. The trial court excluded all testimony concerning new recollections produced by the hypnosis. Mrs. Whalen's testimony was restricted to her prehypnotic recall, which included her initial description of the assailant, the first and second photographic lineups, and her portrait sketches. The hypnosis was not referred to during trial.

■ In *Mack*, the Minnesota Supreme Court suggested, without adopting, that police follow certain procedures when conducting hypnosis interviews. 292 N.W.2d at 771 n. 14. The safeguards are designed to produce an environment where hypnotized witnesses recall events without undue influence from police officers or others. These safeguards were not followed when Mrs. Whalen was hypnotized, although the session was videotaped. The hypnotist was a police officer who had attended a short training seminar.

A similar situation is found in *State v. Koehler*, 312 N.W.2d 108 (Minn.1981). In *Koehler*, police officers conducting the hypnosis had little training and were also eye witnesses in the case. Despite the tainted hypnosis, the case was remanded with an instruction allowing the witness to testify to facts "previously and unequivocally disclosed by him to the authorities, prior to hypnosis." *Id.* at 110.

In *State v. Blanchard*, 315 N.W.2d 427 (Minn.1982), a witness was allowed to testify at trial concerning memories refreshed by hypnosis. Although the testimony resulting from the hypnosis should not have been admitted, the court held this testimony was not reversible error because it was not prejudicial. The court based its finding on the availability of other witnesses and

---

1. Other jurisdictions permit witnesses to testify concerning events recalled prior to hypnosis. *See, e.g., State ex rel. Collins v. Superior Ct.,* 132 Ariz. 180, 644 P.2d 1266 (1982); *People v. Wallach,* 110 Mich.App. 37, 312 N.W.2d 387 (1981); *Commonwealth v. Taylor,* 294 Pa.Super.Ct. 171, 439 A.2d 805 (1982); *State v. Patterson,* 213 Neb. 686, 331 N.W.2d 500 (1983); *Commonwealth v. Kater,* 388 Mass. 519, 447 N.E.2d 1190 (1983); *see also Collins v. State,* 52 Md.App. 186, 447 A.2d 1272 (1982).

on the fact that the witness's "pre-hypnotic memory contained devastating evidence against defendant." *Id.* at 431.

■ In this matter, Mrs. Whalen's testimony at trial was identical with her prehypnotic statement. Moreover, no testimony was introduced at trial regarding memories recalled for the first time during the hypnosis. Mrs. Whalen's prehypnotic recall was substantial and damaging. Other witnesses' testimony about appellant's whereabouts at the time of the assault corroborated her identification. Accordingly, the order denying appellant's motion for postconviction relief is affirmed in accordance with the rule set forth by this court in *In re J.R.D.*

■ 2. Our examination of the record, however, reveals that the procedures used during the hypnosis session with Mrs. Whalen were less than optimal. We find that there was no prejudice in this case because Mrs. Whalen's prehypnotic statements and sketches, in combination with the corroborating testimony of other witnesses, were sufficient to sustain appellant's conviction. Likewise, we are aware that the hypnosis interview in this case took place prior to the release of *State v. Mack.*

■ Nevertheless, this court takes judicial notice that the use of hypnosis in police investigations has expanded in recent years and takes this opportunity to express the standards under which this court will review trial courts' decisions concerning the admissibility of prehypnotic recall testimony.

The basic concerns expressed in *Mack* regarding the admissibility of facts remembered for the first time during the hypnosis session are applicable in lesser degrees to the admission of prehypnotic recall testimony. The subject of hypnosis is highly susceptible to suggestion, is likely to confabulate, and will exhibit an unwarranted confidence in the truthfulness of his recollections. *Mack*, 292 N.W.2d at 768–69; *see also People v. Shirley*, 31 Cal.3d 18, 39, 181 Cal.Rptr. 243, 255, 641 P.2d 775, 787 (1982); *Diamond, Inherent Problems in the Use of Pretrial Hypnosis on a Pro-spective Witness*, 68 Calif.L.Rev. 313 (1980). Even where the substance of the testimony is not changed by the hypnosis, as is the case with prehypnotic recall testimony, the witness is likely to have an improved demeanor, increased confidence, and strengthened convictions.

■ On the other hand, hypnosis is "an extremely useful investigative tool when a witness is enabled to remember verifiable factual information which provides new leads to the solution of a crime." 292 N.W.2d at 771. The person who is hypnotized is often the victim of the crime. Exclusion of a crucial witness's testimony because of the necessity of employing hypnosis as a valid investigative technique would not serve the ends of justice. One court states:

> The fallibility of human memory poses a fundamental challenge to our system of justice. Nevertheless, it is an inseparable fact of life that must be understood and accomodated. Rather than require historical accuracy as a condition for admitting eyewitness testimony, we depend on the adversary system to inform the jury of the inherent weaknesses of evidence.

*State v. Hurd*, 86 N.J. 525, 542–43, 432 A.2d 86, 95 (1981) (citations omitted). It is with these considerations in mind that we adopt the following:

### STANDARDS

■ (1) The trial court shall determine the admissibility of prehypnotic recall testimony at the omnibus hearing. *See* Minn.R. Crim.P. 11.05 comment (1984).

■ (2) The trial court shall determine (a) whether the prehypnotic recall testimony of the witness is admissible and, if so, (b) the scope of that witness's testimony at trial.

■ (3) The party seeking to introduce the testimony of a previously hypnotized witness shall have the burden of proof to establish by clear and convincing evidence that the testimony is reliable and not the product of unnecessary suggestiveness.

■ (4) At a minimum, the party seeking to introduce prehypnotic recall testimony must establish:

(a) The hypnosis was performed by a psychiatrist or psychologist with special training in its use;

(b) The psychiatrist or psychologist conducting the hypnosis was an independent professional not responsible to the prosecution, investigators, or defense (this does not, however, preclude a fee);

(c) The psychiatrist or psychologist conducting the hypnosis was not an investigator, witness, or otherwise involved in the case;

(d) That all contact of the psychiatrist or psychologist conducting the hypnosis with the person hypnotized was videotaped. The complete unedited videotape shall be available for discovery and at the Omnibus Hearing;

(e) The psychiatrist or psychologist conducting the hypnosis elicited a detailed description of the facts as the witness remembered them on the videotape prior to the initiation of the hypnosis;

(f) No person besides the psychiatrist or psychologist conducting the hypnosis and the subject of the hypnosis was present in the room during the hypnosis session or the initial description session;

(g) The psychiatrist should strive to avoid adding any new elements to the witness's description of his experiences, including those which he had discussed in his wake state, lest he inadvertently alter the nature of the witness's memories—or constrain them by reminding him of his waking memories.

■ (5) If the trial court finds the witness's testimony is reliable and not the product of unnecessary suggestiveness, the court may then determine the scope of the witness's testimony to be permitted at trial.

■ (6) The scope of the witness's testimony shall be limited to the witness's prehypnotic recollections. If testimony of the witness is excluded, depositions and statements made by the witness prior to hypnosis may be introduced at trial under ordinary evidentiary standards.

■ (7) If the witness is allowed to testify, the opposing party may introduce proof with respect to the hypnotic procedures followed and expert testimony concerning the potential effects of hypnosis on the witness's recollection.

■ (8) The psychiatrist or psychologist who performed the hypnosis may not, however, testify about his beliefs regarding the truthfulness of the witness's statements or the state of the witness's mind at the time of the crime. At the opposing party's request, the court shall charge the jury that hypnosis usually increases a witness's confidence in his recollections. Otherwise, no mention of the hypnosis shall be made in the instructions.

■ (9) The introduction of testimony concerning hypnotic procedures and the effects of hypnosis by the opposing party is not a waiver of any objections to such testimony and does not permit the trial court to expand the scope of the witness's testimony as determined at the omnibus hearing.

■ We adopt these standards prospectively, in substantially the same form as set forth in *Mack*. Cf. *Mack*, 292 N.W.2d at 771 n. 14.

### DECISION

■ This court believes that hypnosis should be used sparingly and only under the guidelines and standards set forth above. While hypnosis is an important investigative tool, the technique has the potential to contaminate and solidify a witness's memory unless precautions are taken.

The order denying post-conviction relief is affirmed.