**STATE of Minnesota, Appellant,**

v.

**Michael Allen GRIMMETT, Respondent.**

**No. C7–90–1194.**

Court of Appeals of Minnesota.

Sept. 4, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Gregory D. Larson, Hubbard County Atty., Park Rapids, for appellant.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for respondent.

Considered and decided by SHORT, P.J., LANSING, and THOREEN,* JJ.

## OPINION

LANSING, Judge.

Mike Grimmett is charged with first degree criminal sexual conduct. In a pretrial ruling, the court excluded the testimony of the complainant because it was tainted by hypnosis. The state appeals the ruling and we affirm in part and reverse in part.

### FACTS

According to the criminal complaint, police encountered the complainant after responding to a report that an intoxicated woman was walking along Highway 71, south of Park Rapids, Minnesota. The woman informed the police that she had been raped and showed them a folding buck knife which she said had been used in the assault.

The following day, law enforcement officers interviewed the complainant. She recalled parts of the previous evening including drinking with a friend at a bar called "Art's Place" and being in a small bedroom where a man with a knife forced her to perform oral sex. When the man went to another room, she took the knife and hid it in her coat pocket. The next thing she remembered she was walking down Highway 71.

By questioning the bartender and patrons of Art's Place, police narrowed their investigation to Mike Grimmett. From a photographic display the complainant identified Grimmett as her assailant. Police arrested Grimmett and recovered a knife case from him which matched the folding buck knife. Grimmett conceded that he had engaged in sexual activity with the complainant, but contended that she had consented.

Approximately a week later, the complainant visited a psychologist to clarify her memory of the incident by hypnosis, apparently at the advice of a sexual assault advocate. Complainant saw the psychologist three times. The visits were intended not for investigative or legal purposes, but for therapeutic treatment. During all three sessions, hypnotic techniques were used. According to the psychologist, the complainant's "ability to go into a trance was very limited, and she did not go into a deep trance." When asked whether the complainant succumbed to hypnosis, the psychologist replied, "Not in terms of going into a deep trance, no." The psychologist later stated, "What she did go into was visualizing and remembering, re-experiencing what happened but in a rather ordinary state of consciousness except for being relaxed."

It is not readily apparent whether the therapy sessions prompted additional memories of the incident, but there appears to be agreement that the complainant now remembers some new details which were not disclosed in her pretherapy statements to the police. For example, she now re-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 2.

members being physically restrained from leaving Grimmett's apartment.

## ISSUES

1. Did the trial court err by determining that the complainant underwent hypnosis during her therapy sessions?

2. Did the trial court err by ruling that the complainant's hypnotically-induced testimony should be excluded?

3. Is complainant's prehypnotic recall testimony admissible?

## ANALYSIS

■ When a witness in a criminal proceeding "revives" memory through hypnosis, that witness ordinarily is not permitted to testify to what was "remembered" under hypnosis. *State v. Mack*, 292 N.W.2d 764, 771 (Minn.1980). The state initially argues that the *Mack* line of cases do not apply because the complainant was not successfully hypnotized during her therapy sessions.

■ Our examination of the record leads us to conclude that the trial court did not err in determining that the complainant underwent hypnosis. Her treating psychologist testified at the omnibus hearing that the complainant did not enter a *deep* trance. It was reasonable for the trial court to infer from this testimony that the complainant had entered a less-than-deep trance. The trial court also relied on the psychologist's statement that the complainant "re-experienced" the incident by visualization. The court's reliance on sensory observations was appropriate in light of its reservations about the psychologist's expertise and qualification to provide a reliable opinion on whether hypnosis had occurred. The evidence adequately supports the trial court's determination that the complainant was affected by hypnosis.

■ The state alternatively argues that even if the complainant underwent hypnosis, her testimony should not be disqualified. The supreme court has consistently ruled that hypnotically-induced testimony is not ordinarily admissible in criminal cases. *State v. Ture*, 353 N.W.2d 502 (Minn.1984);

*State v. Blanchard*, 315 N.W.2d 427 (Minn. 1982); *State v. Koehler*, 312 N.W.2d 108 (Minn.1981); *Mack*. This rule proceeds from the concern that hypnotized subjects are unusually susceptible to suggestion. *See Mack*, 292 N.W.2d at 768–69. The court has indicated that hypnotically-induced testimony may be admissible if adequate safeguards are established to assure the hypnotized subject is not unduly exposed to suggestion. *Id.* at 771. Examples of such safeguards, formulated by Dr. Martin T. Orne, a leading expert in forensic hypnosis, were noted but not adopted by the *Mack* court. *Id.* at 771 n. 14.

In the present case, there were few safeguards to show that complainant was protected from undue suggestion. The hypnosis sessions were not audiotaped or videotaped. We do not know how the psychologist worded his questions or whether he made any improper comments. Without such a record, it is impossible to ascertain whether subtle or even blatant suggestions were communicated to the complainant. This risk of susceptibility to suggestion is, absent unusual circumstances, unacceptable. Any hypnotically-induced testimony was properly determined to be inadmissible.

■ The admissibility of evidence remembered *prior* to the hypnosis, however, is a separate question. In *Rodriguez v. State*, 345 N.W.2d 781 (Minn.App.1984), we ruled that for prehypnotic recall testimony to be admissible, the proponent of the testimony must establish at a minimum that the Orne safeguards, as noted in *Mack*, had been met. *Rodriguez* at 787. *Rodriguez*, however, has been implicitly overruled by *State v. Ture*, 353 N.W.2d 502, 514 n. 8 (Minn.1984), in which the supreme court expressly declined to adopt the Orne standards. Because *Rodriguez* has been overruled, the appropriate analysis to apply is stated in *State v. Koehler*, 312 N.W.2d 108 (Minn.1981). In *Koehler*, a trial court admitted the testimony of a witness who had been hypnotized prior to trial. The supreme court remanded for a new trial, ruling that:

[The witness] may not testify to matters adduced at the pretrial hypnotic interview *except as such matters were previously and unequivocally disclosed by him to the authorities, prior to the hypnosis.*

*Id.*, 312 N.W.2d at 110 (emphasis added).

Applying *Koehler*, we hold that the complainant should have been allowed to testify on matters unequivocally disclosed prior to her hypnosis. The trial court erred by suppressing the complainant's testimony in its entirety.

■ Under *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977), the prosecution's pretrial appeal must establish not only that the court's ruling was incorrect but that the ruling will have a critical impact on the outcome of the trial. We believe this standard has been met. The strength of the state's case depends upon the credibility of the complainant. If she is not allowed to testify, her demeanor will not be subject to examination and conviction will be significantly less likely.[1]

## DECISION

The trial court correctly ruled that the complainant may not testify as to her hypnotically-revived memories. The trial court erred, however, in excluding testimony of matters unequivocally disclosed prior to the hypnosis.

Affirmed in part, reversed in part.

---

1. We need not address whether the Confrontation Clause would have restricted the state's use of the complainant's out-of-court statements. *See Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).