UNITED STATES of America, Appellee,

v.

**Bobby Joe DEMERY, Appellant.**

No. 92–1486.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1992.

Decided Dec. 2, 1992.

Joel F. Arnason, Grand Forks, N.D., argued, for appellant.

Dennis D. Fisher, Asst. U.S. Atty., Fargo, N.D., argued (Stephen D. Easton, U.S. Atty., and Norman G. Anderson, Asst. U.S. Atty., on brief), for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

A jury convicted Bobby Joe Demery of assault resulting in serious bodily harm and assault with a dangerous weapon with intent to do bodily harm. He appeals from the district court's[1] entry of judgment, claiming insufficiency of the evidence. We affirm.

The convictions arose from an altercation on the Turtle Mountain Indian Reservation in North Dakota. The victim, Corey Baker, was visiting at the home of his aunt, Alice LaVallie. While watching television during the early morning hours of April 19, 1991, Baker heard a disturbance outside. He looked out and saw Bobby Joe Demery (Demery) and Demery's brothers, Alvin and Rocky, across the street. Demery and his brothers were visiting Demery's girlfriend, Tammy Baron, who lived across the street from the LaVallies. Baker and his uncle, Ed Scott, exchanged words with Demery and his brothers, who then entered the LaVallie yard and continued arguing with Baker and Scott.

Alice LaVallie awoke and asked Baker and Scott to shut the door and told Demery and his brothers to leave. No one responded to her request, and the argument intensified. Finally, Baker and Scott shut the door. Demery and his brothers would not leave, however, and pounded on the door in an attempt to get inside. Corey Baker grabbed a crutch lying in the living room and ran outside, trying to chase the Demerys away. He hit no one with the crutch.

Demery ran across the street to the Baron house, and came out with something in his hand. Demery and his brothers then attempted to force their way into the LaVallie home. As they pushed, the door flew open and Baker saw Demery run into the doorway and throw a knife at his face. He put up his hand to deflect the knife, and it nearly severed his little finger, leaving it attached by only a small piece of skin.

Demery claimed in a post-arrest interview that he knew of the altercation but he had nothing to do with it. He claimed that his brothers were involved, but that he had not set foot in the LaVallie yard.

At trial, both Corey Baker and Alice LaVallie identified Demery as the assailant. One of the women with Demery and his brothers testified that she saw Demery run into the Baron house, grab some knives

---

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

and run back out. A short time later, Demery returned and told those assembled, "I think I just cut a guy's throat."

Demery called only one witness, his brother Rocky. Rocky Demery testified that he threw the knife at Baker in self-defense, and that he was the only one involved in the altercation. On cross-examination, Rocky Demery admitted that on the day of the assault he stated that he did not see a knife and did not know how Baker had been injured.

The jury convicted Demery of assault resulting in serious bodily harm and assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 1153, 113(c) and 113(f), and this appeal followed.

Demery claims that there was insufficient evidence to convict him because (1) there was not enough light in the yard to permit a positive identification, and (2) his brother testified that he threw the knife. Demery further claims that the evidence was insufficient to prove that Baker suffered serious injury.

In reviewing a jury verdict, this court must affirm if there is substantial evidence to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We must examine the evidence in the light most favorable to the government, and give it the benefit of all reasonable inferences. *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir. 1990). An appellate court can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* This standard is a strict one, and a jury verdict should not be overturned lightly. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

■ Demery first argues that the light was insufficient to allow Baker's and La-Vallie's identification of him as the assailant. Testimony at trial revealed that at the time of the altercation, the lighting consisted of a yard light in the Baron yard and light from inside the LaVallie home. Despite Demery's claims that the light was insufficient to permit identification, several witnesses testified that the light was sufficient for them to see the events in the yard that evening. Joletta Allery testified that with the light from the LaVallie house and the yard light, she could identify Corey Baker standing in the doorway, even though she was inside the Baron house across the street. Rocky Demery testified that there was enough light outside that he could identify Corey Baker as the person who swung the crutch at him. Finally, Wilfred Bercier, a tribal housing security officer, testified that he could clearly see people in the LaVallie yard from twenty to twenty-five yards away.

■ Demery also argues that the similarities in appearance between Demery and his brothers prevented a positive identification. This argument fails. Both Alice La-Vallie and Corey Baker testified that they were certain that Demery, and not one of his brothers, threw the knife. Both testified that they previously had met Demery, and could identify him. In fact, Alice La-Vallie testified that her boyfriend gave Corey Baker and Demery a ride in his truck only two days before the assault. Moreover, both Baker and LaVallie testified that they were within ten feet of Demery when the knife was thrown.

Finally, other evidence corroborates the eyewitness identification of Demery as the assailant. Joletta Allery, who was staying at the Baron home across the street, testified that Demery ran into the house, grabbed a knife, and ran back out. She further testified that upon Demery's return, he stated that "I think I just cut a guy's throat." Viewing all the evidence in the light most favorable to the government, as we must, we believe that a reasonable jury could conclude beyond a reasonable doubt that Demery threw the knife.

Rocky Demery's trial confession does not upset this conclusion. Rocky admitted on the stand that he had lied about the incident in the past and the jury was free to disregard his testimony.

■ Demery also contends that the evidence was insufficient to prove that Baker suffered a serious bodily injury. This argument also fails. The question whether

injury is serious presents a question of fact for the jury. *United States v. Johnson,* 637 F.2d 1224, 1246 (9th Cir.1980). The district court correctly instructed the jury that " '[s]erious bodily injury' means something more than slight bodily injury. It means bodily injury of a grave and serious nature. It does not require a high probability of death." *See United States v. Moore,* 846 F.2d 1163, 1166 (8th Cir.1988) (serious bodily injury means something more than minor injury, but not necessarily life threatening injury). Here, the jury heard testimony that Baker's little finger was nearly severed from his hand, and that Baker suffered permanent impairment of movement and sensation in that finger. From this evidence, a reasonable jury could conclude that Baker suffered serious injury.

For all the foregoing reasons, we affirm the judgment of the district court.