UNITED STATES of America, Plaintiff,

v.

Alfonso RODRIGUEZ, Jr., Defendant.

Criminal Case No. C2–04–55.

United States District Court, D. North Dakota, Northeastern Division.

Sept. 27, 2005.

Nevertheless, Braesch remains good law for principles discussed in the text.

Drew H. Wrigley, U.S. Attorneys, Fargo, ND, for Plaintiff.

Richard Ney, Richard Ney Law Office, Wichita, KS, Robert G. Hoy, Ohnstad Twichell, West Fargo, ND, for Defendant.

## ORDER ON SECOND ROUND
## OF PRETRIAL MOTIONS

ERICKSON, District Judge.

The Court has before it several pretrial motions filed by Defendant (doc. ## 88, 90, 92, and 94) and a motion to reconsider from the government (doc. # 126). A hearing was held on August 19, 2005, during which the Court took these motions under advisement. The Court has carefully considered the briefs submitted by the parties along with the arguments and statements of counsel at the hearing and now issues this memorandum opinion and order.

### SUMMARY OF RULINGS

I. Because the first statutory aggravating factor in the government's "Notice of Intent to Seek a Sentence of Death" does not duplicate an element of the crime and striking this factor would prevent the jury from considering a circumstance of the crime when deciding whether to impose the death penalty, Defendant's Motion to Strike this factor from the notice is DENIED.

II. Because Defendant's conviction in Polk County case # 6192 has not been vacated, Defendant's Motion to Strike this conviction from the aggravating factors is DENIED.

III. Because the issue of whether Defendant's convictions in Polk County case ## 5447 and 5438 involved the infliction of, or the attempted infliction of, serious bodily injury is a question of fact, the Motion to Strike these convictions is DENIED.

IV. Because the United States Supreme Court has upheld the use of psychiatric testimony on the issue of future dangerousness, Defendant's Motion to Strike the non-statutory aggravating factor of future dangerousness is DENIED.

V. Because the government has not identified any exceptional circumstances requiring the Court to vacate its previous order regarding the clarification of the Notice of Intent to Seek a Sentence of Death, Plaintiff's Motion to Reconsider is DENIED.

## MOTIONS

I. Motion to Strike the Statutory Aggravating Factor that Defendant Caused the Death of Dru Sjodin during a Kidnapping

■ Defendant is charged with knowingly kidnapping Dru Sjodin and willfully transporting her in interstate commerce. Among other things, the indictment also alleges that this kidnapping resulted in her death. In the government's "Notice of Intent to Seek a Sentence of Death," the first statutory aggravating factor states that the defendant "caused the death of Dru Katrina Sjodin during the commission of a violation of 18 U.S.C. § 1201 (kidnapping)...." Defendant alleges that this statutory aggravating factor merely duplicates an element of the crime. Based on this allegation, Defendant argues that this aggravating factor should be struck from the notice because it does not narrow the class of persons eligible for the death penalty.

In *United States v. Jones,* 132 F.3d 232, 237 (5th Cir.1998), the defendant was charged with kidnapping resulting in the victim's death. Just as in the present case, one of the statutory aggravating factors was that "the defendant caused the death or injury resulting in the death of [the victim] during the commission of the offense of kidnapping." *Id.* at 238 n. 1. The Jones court held that this aggravating factor was not an unconstitutional duplication of an element of the crime. *Id.* at 249. The court explained that during the guilt phase of the trial, the jury only determined whether the defendant was guilty of kidnapping with death resulting. *Id.* Only at the penalty phase did the jury then determine whether the defendant had actually caused the death of the victim during the commission of the crime of kidnapping. *Id.*

Defendant argues that only when there are multiple defendants charged with kidnapping could it be possible that the "causing the death" aggravating factor would not duplicate an element of the crime. However, there are any number of factual scenarios with a sole defendant where the defendant would not have caused the death of his kidnapping victim. For example, the victim could die as a result of a risky escape, such as jumping out of a moving vehicle. In that situation, the kidnapper would not have "caused" the death. Therefore, the government's first statutory aggravating factor is not an unconstitutional duplication of an element of the crime. *Jones,* 132 F.3d at 249.

Defendant argues that the reasoning in *United States v. Kaczynski,* No. CR–S–96–259GEB GGH, 1997 WL 716487 (E.D.Cal. Nov. 7, 1997) and *United States v. McVeigh,* 944 F.Supp. 1478 (D.Colo.1996) supports his argument. In Kaczynski, the first statutory aggravating factor alleged that "[t]he death, or injury resulting in death, occurred during the commission or attempted commission of an offense under 18 U.S.C. § 844(d) which prohibits transportation of an explosive device in interstate commerce with intent to kill." 1997 WL 716487, at *1. In McVeigh, two of the statutory aggravating factors alleged "[t]hat the deaths or injuries resulting in death occurred during the commission of an offense under ... 18 U.S.C. § 844(f) (destruction of government property by explosives) ... and 18 U.S.C. § 2332a (use of a weapon of mass destruction)." 944 F.Supp. at 1488–89. In both of these cases, the district courts struck these statutory aggravating factors because they were identical to counts in the indictments. Kaczynski, 1997 WL 716487, at *22–23; McVeigh, 944 F.Supp. at 1489–90. Unlike the present case, these aggravating factors did not narrow the class of defendants that are eligible for the death penalty by alleging that the defendants had been the ones who actually caused the deaths.

Furthermore, the reasoning of the Kaczynski and McVeigh courts has been called into question by numerous other courts.[1] As one district court observed, the McVeigh reasoning appears to come right out of the dissent from *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). *Llera Plaza*, 179 F.Supp.2d at 484. The flaw in the Kaczynski reasoning is that it starts from the assumption that the class of death-eligible defendants that must be narrowed is the class of all defendants that have committed the same offense as the defendant before the court. *Id.* However, the Supreme Court cases of *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) and *Arave v. Creech*, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) explain that the class of defendants that must be narrowed is that class of defendants that have been convicted of any capital crime. *Id.*

As the Court stated in Tuilaepa, "the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty." 512 U.S. at 976, 114 S.Ct. 2630. Defendant argues that the jury will be able to consider the circumstances of the crime through the use of other factors included in the Notice of Intent to Seek a Sentence of Death such as the allegation that the defendant "intentionally inflicted serious bodily injury that resulted in the death of Dru Katrina Sjodin." However, if the Court were to remove the statutory aggravating factor under II.(a), the jury would no longer be considering one circumstance of the crime: that the defendant allegedly caused her death during a kidnapping. The fact that the death occurred during the commission of another crime appears nowhere else in

the Notice. Removing this aggravating factor would violate the Supreme Court's holding that the sentencer must consider the circumstances of the crime when deciding whether to impose the death penalty. *Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630. Therefore, Defendant's motion to strike the statutory aggravating factor under II.(a) is DENIED.

II. Motion to Strike Polk County Conviction in Case # 6192 from the Statutory Aggravating Factors

■ The relevant facts from the conviction in Polk County criminal case # 6192 are as follows: On April 13, 1980, Rodriguez tried to kidnap a woman in Crookston, Minnesota. *Rodriguez v. State*, 345 N.W.2d 781, 784 (Minn.Ct.App.1984). She fought him off and escaped with minor stab wounds. *Id.* It turned out that she was a portrait artist, so she drew a sketch of her attacker, but she was unable to pick Rodriguez' picture out of a lineup. *Id.* When the police showed her a second photographic lineup, she picked Rodriguez' picture as looking the most like her attacker, but she also thought the eyes of a man in another photograph looked familiar. *Id.* Following this second photo lineup, she drew a second sketch of her assailant, and this sketch "closely resembled" Rodriguez. *Id.*

The police then hypnotized the victim, and during hypnosis, she positively identified Rodriguez as her assailant. *Rodriguez*, 345 N.W.2d at 784. At trial, the court limited her testimony to her pre-hypnosis recollections. *Id.* at 785. Following Rodriguez' trial, the Minnesota Supreme Court held that testimony derived through the use of hypnosis may not be

---

1. Cases that have reached the opposite conclusion of *Kaczynski* and *McVeigh* include *United States v. Lentz*, 225 F.Supp.2d 666 (E.D.Va.2002); *United States v. Llera Plaza*, 179 F.Supp.2d 464 (E.D.Pa.2001); and *United States v. Johnson*, 136 F.Supp.2d 553 (W.D.Va.2001).

admitted at a criminal trial. *State v. Mack*, 292 N.W.2d 764, 772 (Minn.1980).

While the trial judge did exclude all testimony elicited through hypnosis, Rodriguez, 345 N.W.2d at 785, Defendant argues that a violation of Mack occurred when the victim was allowed to identify Rodriguez at trial. It is not clear from the case how this occurred. The court only states: "During trial, Mrs. Whalen identified appellant as her assailant." *Id.* at 784. Did she simply repeat all of her pre-hypnosis recollections that identified Rodriguez as her attacker? Or did she actually point to Rodriguez in open court and identify him as her attacker? If the latter occurred, it is possible that the trial court had some procedural safeguards in place that required her to make this identification based solely on pre-hypnotic recollections.

Presumably Defendant's argument would be that it would be impossible for a witness to separate her pre-hypnotic recall from her post-hypnotic recall. One of the concerns about the reliability of hypnosis is that following hypnosis, the subject cannot distinguish between actual memories and any memories that may have been invented during hypnosis. *Sprynczynatyk v. Gen. Motors Corp.*, 771 F.2d 1112, 1120 (8th Cir.1985). "After hypnosis the subject has one memory of the past event, the hypnotic memory, and that becomes hardened in the subject's mind." *Id.* (citing *Mack*, 292 N.W.2d at 769). Therefore, if Mrs. Whalen's identification of Rodriguez involved pointing to him in the courtroom, she may have been subconsciously influenced by hypnosis, which would supposedly be a violation of Mack. Therefore, that one small portion of her testimony might be inadmissible.

Defendant's biggest obstacle with respect to this argument is that it was considered and rejected by the Minnesota courts. *Rodriguez*, 345 N.W.2d at 786. When prior convictions are determined to be unconstitutional by the state where they were obtained, any sentence based on those prior unconstitutional convictions must be vacated. *United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In the context of a death penalty case, any prior conviction that was overturned by the state of origin could not be used as an aggravating factor for the death penalty. Cf. *id.* In this case, the Minnesota courts upheld the conviction in case # 6192 even when confronted with the identical arguments Defendant raises now.[2] Since this conviction was not unconstitutional, it may be used as an aggravating factor. Cf. *id.*

III. Motion to Strike Polk County Convictions in Case ## 5447 and 5438 from the Statutory Aggravating Factors

In case # 5438, Rodriguez pled guilty to Attempted Aggravated Rape. In case # 5447, Rodriguez pled guilty to Aggravated Rape. The government has included these convictions in its Notice of Intent to Seek a Sentence of Death under the statutory aggravating factor that they are previous convictions that involved "serious bodily injury" pursuant to 18 U.S.C. § 3592(c)(4). Defendant argues that neither of these convictions involve serious bodily injury according to *United States v. Rivera*, 83 F.3d 542 (1st Cir.1996).

Rivera involved the interpretation of 18 U.S.C. § 2119, which is the federal carjacking statute. 83 F.3d at 544. Under

---

**2.** Defendant argues that *State v. Koehler*, 312 N.W.2d 108 (Minn.1981) compels the conclusion that Rodriguez' conviction should be vacated. However, the Minnesota courts had the Koehler precedent at the time they decided Rodriguez' hypnosis arguments, and they still upheld his conviction.

the carjacking statute, the maximum term of imprisonment is increased to twenty-five years if a "serious bodily injury" results from the commission of the crime. 18 U.S.C. § 2119. "Serious bodily injury" was defined by referencing the definition used in 18 U.S.C. § 1365. 18 U.S.C. § 2119(2). Under that statute, "serious bodily injury" means "bodily injury which involves—(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty...." 18 U.S.C. § 1365(g)(3).

The Rivera court was confronted with the issue of whether a rape constituted "serious bodily injury" within the meaning of this definition. 83 F.3d at 548. The victim's testimony of the incident did not include any specific description of the assault. Id. at 547. The medical report indicated that there was no evidence of any physical trauma to her body. Id. She did not receive any professional counseling or assistance after the assault. Id. at 548. While the court acknowledged that a rape "is a unique and reprehensible physical and psychic invasion," it held that the scant evidence before it relating to the assault did not meet the definition of "serious bodily injury" under 18 U.S.C. § 1365. Id.

In this case, the term "serious bodily injury" appears in a section of the Federal Death Penalty Act ("FDPA"), and, unlike the carjacking statute in Rivera, there is no cross-reference to 18 U.S.C. § 1365. Defendant argues that the definition of serious bodily injury in 18 U.S.C. § 1365 should automatically be imputed to the FDPA even though Congress has not explicitly indicated that it applies in this context.

When interpreting a statute, a court must "presume that [the] legislature says in a statute what it means and means in a statute what it says there." BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). If the statute's text is unambiguous, the inquiry as to its meaning can begin and end with the words used. Id. A court must give the words in a statute their ordinary meaning unless Congress has given a reason to do otherwise. Ashley v. U.S. Dep't of Interior, 408 F.3d 997, 1001 (8th Cir.2005).

The ordinary meaning of "serious" is "that which is of importance, grave, critical, or somber." Webster's Unabridged Dictionary 1749 (2d ed.1997). "Bodily" means "of or pertaining to the body." Id. at 232. And "injury" means "harm or damage that is done or sustained." Id. at 983. Therefore, the ordinary meaning of "serious bodily injury" is a grave or critical harm done to or pertaining to the body.

If a defendant inflicted any critical physical injuries to his victim, those injuries would fit within the ordinary meaning of this phrase. The physical injuries would not have to be life-threatening or the "very highest degree" of physical injury in order to be considered "serious bodily injury." See United States v. Demery, 980 F.2d 1187, 1190 (8th Cir.1992) (interpreting the ordinary meaning of "serious bodily injury"); United States v. Webster, 620 F.2d 640, 642 (7th Cir.1980) (same). What is not clear from the ordinary meaning of this phrase is what kinds of injuries are encompassed by that part of the definition that states these injuries may "pertain to" the body. Does mental trauma or psychic injury qualify as "pertaining to" the body? In the case of rape, there may not be any physical injuries sustained by the victim as a result of the attack, but the mental trauma suffered would often be more devastating than any physical injuries would have

been. Since it is not clear from the ordinary meaning of "serious bodily injury" whether impairment of mental faculty meets the definition, the Court must rely on other interpretive methods to determine the meaning of this phrase. *See Firstar Bank v. Faul,* 253 F.3d 982, 987 (7th Cir.2001) (stating that a court may rely on other canons of statutory interpretation when the ordinary definition does not provide a clear answer).

One canon of statutory interpretation is that "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Another canon states that where a phrase is given a consistent meaning throughout the United States Code, that phrase has the same meaning in any particular instance where that phrase is used. *See, e.g., Dir., Office of Workers' Comp. v. Newport News Shipbuilding & Dry Dock Co.,* 514 U.S. 122, 129–30, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995); *W. Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 88–92, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).

As previously discussed, Congress has defined "serious bodily injury" at 18 U.S.C. § 1365(g)(3). Then it has used that same definition at 18 U.S.C. § 113 and 18 U.S.C. § 2119. The same definition for serious bodily injury appears in several different places in Title 18 of the United States Code. Therefore, the Court may apply that definition to the phrase when it is used in 18 U.S.C. § 3592(c)(4). *Newport News,* 514 U.S. at 129–30, 115 S.Ct. 1278; *W. Va. Univ. Hosps.,* 499 U.S. at 88–92, 111 S.Ct. 1138.

Other district courts have reached this same conclusion. In the jury instructions for capital cases in the Southern District of Georgia and the Western District of North Carolina, both courts used the definition of "serious bodily injury" to define that phrase for the aggravating factor under 18 U.S.C. § 3592(c)(4). http://www.fjc.gov (follow "Educational Programs & Materials"; then follow "Resources for managing capital cases"; then follow "Resources for Managing Federal Death Penalty Trials"; then follow "dpen0029.pdf" and "dpen0031.pdf"). Defendant has also asked this Court to follow that definition. Based on all of these considerations, the Court will apply the definition of "serious bodily injury" in 18 U.S.C. § 1365(g)(3) to 18 U.S.C. § 3592(c)(4).

Defendant argues that under this definition, rape may never constitute "serious bodily injury." This argument reads Rivera too broadly. The Rivera court explained that because the medical report revealed no physical injuries to the victim, 83 F.3d at 547, and she did not receive any professional counseling or assistance after the rape, *id.* at 548, it could not find that she had suffered serious bodily injury. Id. at 549.

As to whether rape, as a matter of law, constitutes serious bodily injury under this definition, the Court was unable to find any cases on this issue. Defendant argues that *United States v. Marcussen,* 403 F.3d 982, 984 (8th Cir.2005)[3], holds that any decision regarding the circumstances of a prior conviction is a legal issue. Marcussen involved the issue of whether a prior conviction met the definition of "crime of violence" under section 4B1.2 of the United States Sentencing Guidelines. *Id.* The court held that this determination is a question of law for the court to decide. *Id.* The underlying reasoning for this opinion explains this result.

---

**3.** This case was not a part of the original briefing. Defendant submitted this case and argument by fax on September 12, 2005.

"To determine the nature of a crime requires an examination of the elements which compose it." *United States v. Moore,* 38 F.3d 977, 979 (8th Cir.1994) (cited in *Marcussen,* 403 F.3d at 984). A determination of these basic elements does not require knowledge of the underlying facts. *Id.* Therefore, it is a question of statutory interpretation, which is a skill best left to the judge. *Id.* In the case of determining whether a crime constitutes a crime of violence, a court has to decide whether "by its nature it involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* (quoting 18 U.S.C. § 924(c)(3)(B)). Since the court only has to determine whether a substantial risk of the use of physical force exists in the nature of that crime, it does not have to look to the specific facts of the conviction to determine whether physical force was actually used. *Id.*

This principle can be seen at work in the Eighth Circuit's conclusion that the burglary of a commercial building is a crime of violence. *United States v. Fleck,* 413 F.3d 883, 895 (8th Cir.2005). The defendant could have entered a commercial building through an unlocked door when nobody was there, and it would still qualify as a crime of violence regardless of the actual facts of the crime. *Id.*

Unlike the determination of whether a crime involved a substantial risk of the use of physical force, the determination of whether a crime involved the infliction of, or attempted infliction of, serious bodily injury is necessarily a question of fact. With serious bodily injury, the court is not looking at whether the nature of the crime involves a risk that injury might occur, instead the court is looking at what actually happened to the victim of that particular crime.

To aid in preparation for trial, the government will provide defense counsel with all the information it intends to use to prove that these two convictions involved the infliction of, or attempted infliction of, serious bodily injury or death upon another person no later than 90 days prior to trial. After reviewing this evidence, if Defendant believes that no reasonable jury could find that these convictions involved serious bodily injury, he may make an appropriate motion at that time to strike the convictions from the Notice.

IV. Motion to Strike Non–Statutory Aggravating Factor of "Future Dangerousness"

 The use of a "future dangerousness" factor to narrow the class of persons eligible for the death penalty does not violate the Eighth or Fourteenth Amendments of the United States Constitution. *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). The government may present psychiatric testimony to a jury to aid in their determination of a particular defendant's future dangerousness. *Barefoot v. Estelle,* 463 U.S. 880, 905–06, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). As the Supreme Court explained: "We are unconvinced, however, at least as of now, that the adversary process cannot be trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness, particularly when the convicted felon has the opportunity to present his own side of the case." *Id.* at 901, 103 S.Ct. 3383.

One district court believes that the time has come to reconsider whether psychiatric evidence on future dangerousness is reliable under the balancing test in the FDPA. *United States v. Sampson,* 335 F.Supp.2d 166, 218 (D.Mass.2004). The *Sampson* court alleges that the scientific community generally agrees that psychiat-

ric testimony on future behavior is unreliable. *Id.* at 219 (quoting Erica Beecher–Monas & Edgar Garcia–Rill, Danger at the Edge of Chaos: Predicting Violent Behavior in a Post–Daubert World, 24 Cardozo L.Rev. 1845, 1845–46 (2003)). The Supreme Court confronted similar criticism when it held that psychiatric testimony was admissible. At that time, the American Psychiatric Association ("APA") argued that psychiatric testimony about future dangerousness was too unreliable to be admitted. *Barefoot,* 463 U.S. at 899, 103 S.Ct. 3383. The Court noted that the APA did not say that psychiatrists' predictions about future dangerousness are always wrong, just that they are wrong most of the time. *Id.* at 901, 103 S.Ct. 3383. The Court decided that "the view of the APA should not be converted into a constitutional rule barring an entire category of expert testimony." *Id.* at 899, 103 S.Ct. 3383.

Apart from the Sampson court's doubt about the "future dangerousness" factor, other lower courts have uniformly upheld this non-statutory aggravating factor as appropriate in capital cases under the FDPA. *United States v. Bin Laden,* 126 F.Supp.2d 290, 303–04 (S.D.N.Y.2001) (citations omitted). The Court finds no reason to depart from well-established precedent.[4] Defendant's Motion is DENIED.

V. Plaintiff's Motion to Reconsider the Order requiring Clarification of the Notice of Intent to Seek a Sentence of Death

 The government has titled this as a "Motion to Reconsider" without citing any authority that would allow it to bring this motion. When parties make "motions to reconsider," courts construe them either as a "Motion to Alter or Amend a Judgment" pursuant to Rule 59(e) of the Federal Rules of Civil Procedure or a "Motion for Relief from Judgment or Order" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *Broadway v. Norris,* 193 F.3d 987, 989 (8th Cir.1999). Since this motion asks the Court to vacate its previous ruling, it is apparently a Motion for Relief from Order pursuant to Rule 60(b). A motion for Rule 60(b) relief should only be granted in exceptional circumstances. *Middleton v. McDonald,* 388 F.3d 614, 616 (8th Cir.2004) (quoting *Sellers v. Mineta,* 350 F.3d 706, 716 (8th Cir.2003)).

The government has not brought any new cases to the Court's attention or any case law that the Court was not already aware of when it made its decision. The government has not presented any new arguments. These are not exceptional circumstances justifying relief. Plaintiff's Motion to Reconsider is DENIED. The government will provide Defendant with an amended notice of intent to seek a sentence of death articulating the specific factual basis for each allegation by October 17, 2005. This amended notice shall be filed under seal with a protective order permitting disclosure only to defense counsel and experts retained by defense counsel.

IT IS SO ORDERED.

---

4. As always, the Court will perform its gatekeeping function under 18 U.S.C. § 3593(c) to exclude evidence on this factor if its probative value is outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.