# REVISED, February 10, 1998

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-10113 and No. 96-10448

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LOUIS JONES, JR.,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

January 5, 1998

Before POLITZ, Chief Judge, BENAVIDES and PARKER, Circuit Judges.

Robert M. Parker, Circuit Judge:

The defendant, Louis Jones, appeals from a conviction of kidnapping with death resulting, in violation of 18 U.S.C. § 1201. After a post-conviction sentencing hearing, the jury recommended the death penalty. The defendant challenges the sentence of death imposed by the court pursuant to the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591-97. After considering all the issues raised by the defendant on appeal, we affirm both the conviction and the sentence of death.

## I.  Background

On February 18, 1995, Pvt. Tracie Joy McBride was abducted at gunpoint from Goodfellow Air Force Base.  During the abduction, Pvt. Michael Peacock was assaulted by McBride's attacker and severely injured while attempting to aid McBride.  The base launched an intense investigation into the abduction of McBride.

On March 1, 1995, Sgt. Sandra Lane informed investigators of the Office of the Air Force Special Investigations ("OSI"), who were investigating the abduction of Pvt. McBride, that her ex-husband, Louis Jones, had attacked her on February 16, 1995, two days before McBride's disappearance.  After convincing Lane to file a complaint, the OSI investigators summoned San Angelo Police who took a sworn statement from Lane.  An arrest warrant was issued for Jones based on the statement made by Lane. Jones was arrested later that evening.

While in state custody for the abduction and sexual assault of Sandra Lane, investigators from the OSI questioned Jones as a possible suspect in the abduction of Pvt. McBride.  The OSI investigators advised Jones of his *Miranda* rights, but Jones indicated that he did not want an attorney and that he was willing to answer questions.  In response to questioning by OSI investigators, Jones gave a written statement admitting to the abduction and murder of McBride.  In his statement, Jones admitted to taking McBride back to his apartment, tying her up, and placing her in the closet.  Jones stated that he then drove McBride to a

2

remote location where he repeatedly struck her over the head with a tire iron until she was dead. Although Jones could not give investigators directions to where the body was located, he indicated that he could show them. Subsequently, Jones lead law enforcement officials to a bridge located twenty miles outside San Angelo under which the body of Tracie McBride was discovered. An autopsy revealed that McBride died due to blunt force trauma to the head. The autopsy also revealed evidence of sexual assault.

Louis Jones was indicted in an instrument that charged him with kidnapping McBride with her death resulting, in violation of 18 U.S.C. § 1201(a)(2). The government alleged that the offense occurred within the special maritime and territorial jurisdiction of the United States. Conviction for kidnapping with death resulting under the Federal Kidnapping Statute, 18 U.S.C. § 1201, could result in a sentence of life imprisonment or death. Exercising the discretion granted by the Federal Death Penalty Act, the United States Attorney prosecuting the case decided to seek the death penalty. As required by 18 U.S.C. § 3593(a), the prosecution filed its Notice of Intent to Seek the Death Penalty. The jury trial commenced on October 16, 1995 and resulted in a guilty verdict on October 23, 1995.

Following Jones's conviction, a separate sentencing hearing was conducted to determine whether Jones would receive a sentence of death. *See* 18 U.S.C. § 3593. To obtain a sentence of death, the government had the burden of proving the following: the death of McBride was an intentional killing; and the existence of one or

3

more aggravating factors make the defendant death-eligible. 18 U.S.C. § 3591(a). In the first stage of the sentencing hearing, the jury was required to determine whether Louis Jones intentionally caused the death of Tracie McBride. 18 U.S.C. § 3591(a). Regarding the intent element, the jury unanimously found: (1) Jones intentionally killed McBride; and (2) Jones intentionally inflicted seriously bodily injury that resulted in the death of McBride.

The second stage of the sentencing hearing required the jury to weigh any aggravating factors against any mitigating factors to determine whether a sentence of death was appropriate. 18 U.S.C. § 3593(e). The government, in its notice of intent to seek the death penalty, set forth four statutory aggravating factors[1] and three non-statutory aggravating factors.[2] In order to consider an

---

[1] The government alleged the following four statutory aggravating factors:
  (1) the defendant caused the death or injury resulting in the death of Tracie Joy McBride during the commission of the offense of kidnapping;
  (2) the defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense, Tracie Joy McBride;
  (3) the defendant committed the offense in an especially heinous, cruel, and depraved manner in that it involved torture and serious physical abuse to the victim, Tracie Joy McBride; and
  (4) the defendant committed the offense after substantial planning and premeditation to cause the death of Tracie Joy McBride.

[2] The three non-statutory aggravating factors are as follows:
  (1) the defendant's future dangerousness to the lives and safety of other persons;
  (2) Tracie Joy McBride's young age, her slight stature, her background, and her unfamiliarity with San Angelo, Texas; and
  (3) Tracie Joy McBride's personal characteristics and the effect of the instant offense on Tracie Joy McBride's family.

4

aggravating factor, the jury must unanimously find that the government established the existence of an aggravating factor beyond a reasonable doubt. 18 U.S.C. § 3593(c). The jury made unanimous findings regarding the following two statutory factors: Jones caused the death of the victim or the injury resulting in the death of the victim during the commission of the offense of kidnapping; and Jones committed the offense in an especially heinous, cruel, and depraved manner. The jury also made unanimous findings regarding the following two non-statutory aggravating factors: McBride's young age, her slight stature, her background, and her unfamiliarity with San Angelo, Texas; and McBride's personal characteristics and the effect of the offense on her family.

Once the jury found aggravating factors to exist, the jury next had to determine whether any mitigating factors existed. To consider a mitigating factor in jury deliberations, only one juror must find that the defendant established the existence of a mitigating factor by a preponderance of the evidence. Of the eleven mitigating factors proposed by the defendant, ten mitigating factors were found to exist by at least one or more jurors.[3] In

---

[3] The defendant proposed eleven mitigating factors, ten of which were found to exist by one or more jurors (the number of jurors finding each mitigating factor is enclosed in brackets):
    (1) the defendant Louis Jones did not have a significant prior criminal record [6];
    (2) the defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform to the requirements of the law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge [2];
    (3) the defendant committed the offense under severe mental

5

deliberations, the jury was asked to weigh the aggravating factors against any mitigating factors to determine the propriety of a death sentence.  The jury returned a unanimous verdict recommending death on November 3, 1995.

II.  Constitutionality of Federal Death Penalty Act

The defendant challenges the constitutionality of the Federal Death Penalty Act, 18 U.S.C. §§ 3591-97, on the following four grounds: (1) the prosecutor's ability to define non-statutory aggravating factors amounts to an unconstitutional delegation of legislative power; (2) the lack of proportionality review combined with prosecutor's unrestrained authority to allege non-statutory aggravating factors renders the statute unconstitutional; (3) the relaxed evidentiary standard at the sentencing hearing combined with the unrestrained use of non-statutory aggravating factors renders the jury's recommendation arbitrary; and (4) the death

---

or emotional disturbance [1];
     (4) the defendant was subjected to physical, sexual, and emotional abuse as a child (and was deprived of sufficient parental protection that he needed)[4];
     (5) the defendant served his country well in Desert Storm, Grenada, and for 22 years in the United States Army [8];
     (6) the defendant is likely to be a well-behaved inmate [3];
     (7) the defendant is remorseful for the crime he committed [4];
     (8) the defendant's daughter will be harmed by the emotional trauma of her father's execution [9];
     (9) the defendant was under unusual and substantial internally generated duress and stress at the time of the offense [3];
     (10) the defendant suffered from numerous neurological or psychological disorders at the time of the offense [1]; and
     (11) other factors in the defendant's background or character militate against the death penalty [0].

Additionally, seven jurors added Jones's ex-wife Sandra Lane as a mitigating factor.

penalty is unconstitutional under all circumstances. We review constitutional challenges to federal statutes de novo. *United States v. Bailey*, 115 F.3d 1222, 1225 (5th Cir. 1997).

## A.

First, the defendant asserts that the prosecutor's authority to define non-statutory aggravating factors results from an unconstitutional delegation of legislative power. The nondelegation doctrine arises from the constitutional principle of separation of powers, specifically Article 1, § 1, which provides that "all legislative Powers herein granted shall be vested in a Congress of the United States." *See Touby v. United States*, 500 U.S. 160, 165 (1991); *United States v. Mistretta*, 488 U.S. 361, 371 (1989). Under the nondelegation doctrine, Congress may not constitutionally delegate its legislative power to another branch of government. *See Mistretta*, 488 U.S. at 372. Congress, however, may seek assistance, within limits, from coordinate branches of government. *See id.* So long as Congress formulates "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Id.*

Jones asserts that Congress failed to formulate an "intelligible principle" in § 3592(c) when it delegated the authority to define additional aggravating factors to the

7

Department of Justice.[4]   On the contrary, the delegated authority is sufficiently circumscribed by "intelligible principles" to avoid violating the nondelegation doctrine. *See United States v. Tipton*, 90 F.3d 861, 895 (4th Cir. 1996). The authority to define nonstatutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion, much like the power to decide whether to prosecute an individual for a particular crime. *See United States v. Armstrong*, __ U.S. __, 116 S.Ct. 1480, 1486 (1996)(noting the prosecutor's broad discretion in deciding whether to prosecute); *United States v. Johnson*, 91 F.3d 695, 698 (5th Cir. 1996)(stating that "[a] prosecutor has broad discretion during pretrial  proceedings to determine the extent of the societal interest in  prosecution.")  Obviously, Congress could not list every possible aggravating factor.  An exclusive list of factors would bind the hands of the prosecutor in deciding whether to pursue the death penalty.

Nevertheless, the prosecution does not have *carte blanche* in devising non-statutory aggravating factors.  At least four limitations guide the prosecution in exercising its delegated authority.  First, the statute limits the scope of aggravating factors to those for which prior notice has been given by the

---

[4] In reviewing similar challenges to the death penalty provisions of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(e), two other circuits rejected this argument. *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996); *United States v. Tipton*, 90 F.3d 861, 895 (4th Cir. 1996).

prosecution.[5]  *See* 18 U.S.C. § 3593(a).  Second, the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating nonstatutory aggravating factors.  For example, due process requires that information submitted as aggravating genuinely narrow the class of persons eligible for the death penalty.  *See Zant v.* Stephens, 462 U.S. 862, 877 (1983).  Third, the district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information.  *See* 18 U.S.C. § 3593(c).  And fourth, the requirement that the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider the non-statutory factors further limits the delegated authority.  *See* 18 U.S.C. § 3593(d).  The requirement of at least one statutory aggravating factor secures sufficient Congressional guidance in classifying death-eligible offenders.  Consequently, these limitations provide the prosecution with an "intelligible principle" so that an unconstitutional delegation does not occur.

### B.

Second, the defendant argues the lack of proportionality review combined with the prosecutor's unrestrained authority to allege non-statutory aggravating factors renders the statute unconstitutional.  Proportionality review examines the appropriateness of a sentence for a particular crime by comparing

---

[5] Section 3592(c) allows the jury to consider "whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c).

the gravity of the offense and the severity of the penalty with sentencing practices in other prosecutions for similar offenses. *See Pulley v. Harris*, 465 U.S. 37, 43 (1984). Although the Court has upheld capital sentencing schemes requiring proportionality review, the Court has never required such review as constitutionally mandated. *See Gregg v. Georgia*, 428 U.S. 153, 204-05 (1976) (plurality opinion) (noting the benefits of proportionality review as a means of preventing arbitrary death sentences, but not mandating such review). *See also Pulley*, 465 U.S. at 44-45 ("that some [capital sentencing] schemes providing proportionality review are constitutional does not mean that such review is indispensable"). Thus, the Constitution does not require comparative proportionality review in every capital case, but only that the death penalty not be imposed arbitrarily or capriciously. *See Pulley*, 465 at 49-50.

The FDPA is not so lacking in other checks on arbitrariness that it fails to pass constitutional muster for lack of proportionality review. *See id*. at 880. The FDPA bifurcates the penalty phase from guilt determination. During the penalty phase, the jury must first determine whether the defendant intentionally killed the victim, or intentionally committed or participated in an act that resulted in the death of the victim. 18 U.S.C. § 3591(a). Then the jury must make a finding, beyond a reasonable doubt, of the existence of any aggravating factor or factors enumerated in § 3592(c). After finding the existence of at least one statutory aggravating factor, the jury may consider the existence of

10

nonstatutory aggravating factors for which notice has been given by the government. *See* 18 U.S.C. § 3593(d). Individual jurors must then consider evidence of any mitigating factor that he or she has found to exist by a preponderance of the evidence. Prior to imposing a sentence of death, the jurors must conclude that evidence of the aggravating factors unanimously found to exist beyond a reasonable doubt, both statutory and nonstatutory, outweighs the mitigating factors any individual juror has found to exist by a preponderance of the evidence. Additionally, the statute provides for appellate review to determine whether the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. 18 U.S.C. § 3595.

Jones argues that the Constitution requires proportionality review when the capital sentencing procedure allows the jury to consider nonstatutory aggravating factors because of the danger that the death penalty will be imposed arbitrarily, capriciously, or freakishly. As long as the statute prevents an arbitrary death sentence, the inclusion of relevant nonstatutory aggravating factors at the sentencing stage does not render the death penalty scheme unconstitutional. *See Barclay v. Florida*, 463 U.S. 939,957 (1983)(citing *Zant v. Stephens*, 462 U.S. 862, 878-89 (1983)). The FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty. First, the legislature designed a narrow statute by applying the death penalty to a limited number

of criminal offenses.[6]  *See* 18 U.S.C. § 3591.  Second, the statute further narrows the class of persons eligible for the death penalty by requiring a finding of at least one statutory aggravating factor.  *See* 18 U.S.C. § 3593(d).  And third, the statute provides for appellate review to determine whether the evidence supports the special finding of an aggravating factor and to ensure that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.  *See* 18 U.S.C. § 3595. Consequently, we hold that the Constitution does not mandate proportionality review when the capital sentencing scheme permits the jury to consider nonstatutory aggravating factors as long as the statute provides for other safeguards against an arbitrary imposition of the death penalty.

C.

Third, Jones argues that the relaxed evidentiary standard at the sentencing hearing combined with the unrestrained use of non-statutory aggravating factors renders the jury's recommendation arbitrary and unreliable.  The Federal Death Penalty Act provides for a relaxed evidentiary standard during the sentencing hearing in order to give the jury an opportunity to hear all relevant and reliable information, unrestrained by the Federal Rules of Evidence.  The FDPA provides:

---

[6] A defendant may be sentenced to death if convicted of the following offenses: espionage, 18 U.S.C. § 794; treason, 18 U.S.C. § 2381; or intentionally murdering  or causing the death of a person during the commission of certain crimes, see, e.g., kidnapping with death resulting, 18 U.S.C. § 1201.

The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c). Therefore, the defendant and the government may introduce any relevant information during the sentencing hearing limited by the caveat that such information be relevant, reliable, and its probative value must outweigh the danger of unfair prejudice.[7]

Although the Eighth Amendment requires a heightened reliability standard in capital sentencing proceedings, the jury must also receive sufficient information regarding the defendant and the offense in order to make an individual sentencing determination. *See Lowenfield v. Phelps,* 484 U.S. 231, 238-239 (1988)(the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). The Court has recognized that the defendant must be given the opportunity to introduce information regarding

---

[7] The relevancy standard enunciated in § 3593(c) actually excludes a greater amount of prejudicial information than the Federal Rules of Evidence because it permits the judge to exclude information where the "probative value is outweighed by the danger of creating unfair prejudice" rather than "substantially outweighed." *See* Fed. R. Evid. 403. *See also* Anti-Drug Abuse Act, 21 U.S.C. § 848(j) (codifying Fed. R. Evid. 403 standard of "substantially outweighs").

13

mitigating factors, without traditional evidentiary restraints, in order to provide the jury with the fullest possible information about the defendant. *See Gregg v. Georgia*, 428 U.S. 153, 204 (1976) ("So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."). *See also Jurek v. Texas*, 428 U.S. 262, 276 (1976) (stating that it is "essential . . . that the jury have before it all possible relevant information about the individual defendant whose fate it must determine"). Although the sentencing hearing will not be governed by traditional evidentiary restraints, the district court will prevent the evidentiary free-for-all prophesied by Jones by excluding unfairly prejudicial information under the standard enunciated in § 3593(c). Consequently, the relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution. *See United States v. Nguyen*, 928 F.Supp. 1525, 1546-47 (D.Kan. 1996).

## D.

Finally, the defendant argues that the death penalty is unconstitutional under all circumstances. We are bound by Supreme Court precedent which forecloses any argument that the death penalty violates the Constitution under all circumstance. *See*

14

*McCleskey v. Kemp*, 481 U.S. 279, 300-03 (1987); *Gregg v. Georgia*, 428 U.S. 153 (1976).

III.   Jury Instructions

A.

The defendant claims that the district court erred by failing to give the defendant's requested instructions.  We review the district court's refusal to give a requested instruction for abuse of discretion. *See United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994).  A refusal to give a requested instruction is reversible error only if the proposed instruction was (1) substantively correct, (2) not substantively covered in the jury charge, and (3) concerned an important issue in the trial, such that failure to give the requested instruction seriously impaired the presentation of a defense. *Id.*

The actual jury instructions given by the district court repeated the sentencing options available under the FDPA.  The instructions traced 18 U.S.C. § 3593(e) by informing the jury that it could recommend death, life without the possibility of release, or some lesser sentence.  The defendant, however, contends that the jury should have been instructed that a failure to reach a unanimous verdict recommending the death penalty would result in the court automatically imposing a sentence of life without the possibility of release.[8]  The defendant's proposed instructions

[8] The defense proposed two jury instructions regarding the unanimity requirement.  Requested instruction number five, entitled "Unanimity Required Only for Death Sentence," provided in relevant part as follows:

15

were not substantively correct because the proposed instructions informed the jury that the failure to return a unanimous verdict would result in an automatic sentence of life without the possibility of release.  Such is not the case under § 3593, which requires unanimity for every sentence rendered by the jury regardless of whether the verdict is death, life without the possibility of release, or, if possible under the substantive criminal statute, any other lesser sentence.  Life without the possibility of release was not the default penalty in the event of non-unanimity.  On the contrary, the failure to reach a unanimous decision regarding sentencing would result in a hung jury with no verdict rendered.  As such, a second sentencing hearing would have to be held in front of a second jury impaneled for that purpose. *See* 18 U.S.C. § 3593(b)(2)(C).  Therefore, the district court did not err by refusing to give the defendant's requested instructions because such instructions were not substantively correct.

---

> In the event, after due deliberation and reflection, the jury is unable to agree on a unanimous decision as to the sentence to be imposed, you should so advise me and I will impose a sentence of life imprisonment without possibility of release.

The defense's requested jury instruction number four provided in relevant part as follows:

> If, after fair and impartial consideration of all the evidence in this case, any one of you is not persuaded that justice demands Mr. Jones's execution, then the jury must return a decision against capital punishment and must fix Mr. Jones's punishment at life in prison without the possibility of release.

16

B.

Additionally, the defendant contends that the district court committed reversible error with the instructions actually given for the following two reasons: First, Jones argues that the instructions actually given by the district court caused the jurors to recommend the death penalty under the false impression that the failure to reach a unanimous verdict would automatically result in the imposition of some lesser sentence. Second, Jones argues that the instructions incorrectly informed the jury they had the option of recommending some lesser sentence, in addition to the death penalty or life imprisonment options. Thus, the defendant claims that the instruction resulted in an arbitrary and capricious imposition of the death penalty in violation of the Eighth Amendment and Due Process.

We review all alleged errors in jury instructions for abuse of discretion. *United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994). A conviction will not be reversed unless the jury instructions, when viewed in their entirety, failed to correctly state the law. *See United States v. Flores*, 63 F.3d 1342, 1374(5th Cir. 1995). Thus, even if a portion of the jury instructions are not technically perfect, the district court's instructions will be affirmed on appeal if the charge in its entirety presents the jury with a reasonably accurate picture of the law. *See id.* (citing *United States v. Branch*, 46 F.3d 440, 442 n. 2 (5th Cir. 1995)). The district court will be reversed, however, if the interpretation urged by the appellant is one that a "reasonable jury could have

17

drawn from the instructions given by the trial judge and from the verdict form[s] employed in this case." *Id.* at 175 (citing *Mills v. Maryland*, 486 U.S. 367, 375-76 (1988)).

If the defendant did not object below, we review for plain error. *See Flores*, 63 F.3d at 1374 (citing *United States v. Willis*, 38 F.3d 170, 179 (5th Cir. 1994)). Under the plain error standard, there must be an error that is plain and that affects substantial rights. *See* Fed. R. Crim. P. 52(b). *See also United States v. Olano*, 507 U.S. 725, 731 (1993)(explaining plain error standard). Thus, an appellate court may correct a plain error only if it meets the following criteria: (1) there must be an error, which is defined as a deviation from a legal rule in the absence of a valid waiver; (2) the error must be clear or obvious error under current law; and (3) the error must have been prejudicial or affected the outcome of the district court proceedings. *See Olano,* 507 U.S. at 732-35; *United States v. Dupre*, 117 F.3d 810, 816 (5th Cir. 1997); *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994)(en banc). Additionally, an appellate court has discretion in deciding whether to correct a plain error. *See Olano,* 507 U.S. at 735-36. Such discretion should not be exercised unless the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *United States v. Young*, 470 U.S. 1, 15 (1985).

The district court instructed the jury as follows:

> After you have completed your findings as to the existence or absence of any aggravating or mitigating factors, you will then engage in a weighing process. In determining whether a sentence of death is appropriate,

18

you must weigh any aggravating factors that you unanimously find to exist--whether statutory or nonstatutory--against any mitigating factors that any of you find to exist. You shall consider whether all the aggravating factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. *Based upon this consideration, you the jury, by unanimous vote, shall recommend whether the defendant should be sentenced to death, sentenced to life imprisonment without the possibility of release, or sentenced to some other lesser sentence.*

If you unanimously conclude that the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, the aggravating factors are themselves sufficient to justify a sentence of death, you may recommend a sentence of death. Keep in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence.

If you recommend the imposition of a death sentence, the court is required to impose that sentence. If you recommend a sentence of life without the possibility of release, the court is required to impose that sentence. If you recommend that some other lesser sentence be imposed, the court is required to impose a sentence that is authorized by the law. In deciding what recommendation to make, you are not to be concerned with the question of what sentence the defendant might receive in the event you determine not to recommend a death sentence or a sentence of life without the possibility of release. That is a matter for the court to decide in the event you conclude that a sentence of death or life without the possibility of release should not be recommended.

. . . .

In order to bring back a verdict recommending the punishment of death or life without the possibility of release, all twelve of you must unanimously vote in favor of such specific penalty.

19

We must first decide whether the instructions given by the district court could have led a reasonable jury to believe that the court would automatically impose some lesser sentence if the jury failed to reach a unanimous verdict, as alleged by the defendant. As we have previously stated, § 3593(e) requires the jury to return a unanimous verdict regardless of whether the jury recommends death, life without the possibility of release, or some other lesser sentence. In arguing that the jury instructions and verdict forms caused the jury confusion, the defendant points to the following: (1) the district court did not repeat the unanimity requirement each time the court mentioned the lesser sentence option in the instruction; (2) decision forms B and C, which recommended the death sentence and life imprisonment without the possibility of release, required the signature of all twelve jurors, while decision form D which recommended a lesser sentence only required the signature of the foreman; (3) the court erred by declining to instruct the jury on the effect of the failure to arrive at a unanimous decision; and (4) after the sentencing hearing, two jurors gave statements to defense attorneys attesting to the confusion caused by the jury instructions.

Regarding the district court's failure to repeat the unanimity requirement each time the court mentioned the lesser sentence option, the instructions could not have led a reasonable jury to conclude that non-unanimity would result in the imposition of a lesser sentence. *See Flores,* 63 F.3d at 1375. Reading the

instructions in their entirety, the court clearly stated that the jury must reach a unanimous verdict. At no time were the jurors ever informed that the failure to reach a unanimous verdict would result in the imposition of a term less than life imprisonment. As such, we hold that the district court did not abuse its discretion by failing to repeat the unanimity requirement.

Additionally, the defendant argues that the disparity of the verdict forms caused the jury to assume that nonunanimity would result in a lesser sentence because form D only required the signature of the jury foreperson, when forms B and C required all twelve juror signatures. The defendant did not object to the format of the verdict forms; therefore, we review for plain error. *See Flores*, 63 F.3d at 1374. Although the verdict forms standing alone could have persuaded a jury to conclude that unanimity was not required for the lesser sentence option, any confusion created by the verdict forms was clarified when considered in light of the entire jury instruction. Consequently, we hold that no error occurred.

Next, Jones argues that the failure to instruct the jury of the consequences of not reaching a unanimous verdict resulted in a violation of the Eight Amendment proscription against cruel, unusual, and excessive punishment. Jones requested, but was denied, an instruction on the failure to arrive at a unanimous decision. Jones points to *State v. Williams,* 392 So.2d 619 (La. 1980), where the Louisiana Supreme Court held that juries must be informed of the consequences of failing to achieve a unanimous

21

verdict. The defendant does not persuade us by invoking *Williams* because the Louisiana death penalty act, under which Williams was sentenced, expressly provided that life imprisonment resulted when the jury could not unanimously agree on the death penalty. Unlike the Louisiana statute, the Federal Death Penalty Act requires the jury to achieve unanimity or no verdict results. *See* 18 U.S.C. § 3593(e). Although the use of instructions to inform the jury of the consequences of a hung jury have been affirmed, federal courts have never been affirmatively required to give such instructions. *See Allen v. United* States, 164 U.S. 492, 501-02 (1896) (upholding the use of supplemental instructions to inform the jury of the effect of a hung jury); *United States v. Sutherland*, 463 F.2d 641, 648 (5th Cir. 1972)(allowing use of *Allen* charge). Consequently, we hold that no constitutional violation occurs when a district court refuses to inform the jury of the consequences of failing to reach a unanimous verdict.

Finally, the defendant attempts to prove the instructions caused jury confusion through the use of juror affidavits. Following the sentencing hearing, two jurors initiated communications with defense attorneys in which the jurors referred to alleged confusion caused by the instructions regarding the unanimity requirement.[9] Jones cannot utilize juror affidavits to

---

[9] Juror Christie Beauregard called the office of the Federal Public Defender and spoke with attorney Carlton McLarty and investigator Daniel Salazar. Mr. Salazar executed an affidavit detailing the conversation he had with Ms. Beauregard in which she stated that she was pressured into changing her vote by other jurors who believed that the court would impose a lesser sentence if the jury did not reach a unanimous verdict.
Juror Cassandra Hastings contacted defense attorney Daniel Hurley.

22

undermine the jury verdict. *See* Fed. R. Evid. 606(b); *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995). Federal Rule of Evidence 606(b) bars juror testimony regarding at least four topics: (1) the method or arguments of the jury's deliberations, (2) the effect of any particular thing upon an outcome in the deliberations, (3) the mindset or emotions of any juror during deliberations, and (4) the testifying juror's own mental process during the deliberations. *See Ruggiero*, 56 F.3d at 652. Under the rule, a juror may only testify to extraneous forces which influence jury deliberations. *See Tanner v. United States,* 483 U.S. 107, 121 (1987)(juror use of alcohol and drugs not extraneous influence on jury deliberations). Allegations of jury confusion caused by jury instructions would not be an outside influence about which a juror could competently testify. *See Peveto v. Sears Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir. 1987). An "outside influence" refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations, such as a statement made by a bailiff to the jury or a threat against a juror. *Id.* (citing Fed. R. Evid. 606(b) Advisory Committee Note and Judiciary Committee Note). Rule 606(b) has consistently been used to bar testimony when the jury misunderstood instructions. *See, e.g., Robles v. Exxon Corp.,* 862 F.2d 1201, 1204 (5th Cir. 1989) (holding that juror testimony regarding misunderstanding of instructions prohibited by rule 606(b)). The defendant argues that the

---

Ms. Hastings executed an affidavit stating that she changed her vote to death under the mistaken belief that if the jury could not reach a unanimous decision, then the court would impose a lesser sentence.

inapplicability of the Federal Rules of Evidence during sentencing hearings precludes the use of Rule 606(b) to bar juror affidavits impeaching the sentence. *See* 18 U.S.C. § 3593(c). The reasons for not allowing jurors to undermine verdicts in jury trials, however, apply with equal force to sentencing hearings. *See Silagy v. Peters*, 905 F.2d 986, 1009 (7th Cir. 1990) (holding that a juror's statements could not be used in a habeas corpus proceeding to impeach the jury's sentencing determination). Noting that the Eighth Amendment requires a "greater degree of reliability when the death sentence is imposed," we are convinced that Rule 606(b) does not harm but helps guarantee the reliability of jury determinations in death penalty cases. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (stating that the qualitative difference with the death penalty requires a greater degree of reliability).

Jury deliberations entail delicate negotiations where majority jurors try to sway dissenting jurors in order to reach certain verdicts or sentences. An individual juror no longer exposed to the dynamic offered by jury deliberations often may question his vote once the jury has been dismissed. Such self-doubt would be expected once extrinsic influences bear down on the former jurors, especially in decisions of life and death. When polled, each juror affirmatively indicated that he had voted for the death penalty. We will not allow a juror to change his mind after the jury has rendered a verdict. In this situation, the outcome could just as easily have turned out the other way with the jurors not supporting the death sentence convincing the death-prone jurors to impose life

24

without the possibility of release. If the jury truly feared that the district court would impose some lesser sentence in the absence of a unanimous recommendation, then the jury had the option of imposing life without the possibility of release. Furthermore, the jury never sought a clarifying instruction to remedy the alleged confusion. Consequently, the affidavits do not convince us that the instructions given by the district court could lead a reasonable jury to believe that the failure to reach a unanimous decision would result in the imposition of a lesser sentence.

## ii.

Additionally, the defendant contends that the district court erred because the instructions misinformed the jury that three sentencing options were available, when in fact only two sentencing options existed under the substantive criminal statute--death and life imprisonment. *See* 18 U.S.C. § 1201. When a statute allows the jury to exercise sentencing powers, due process requires that a jury must be informed of all available sentencing options. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). At Jones' sentencing hearing the district court informed the jury of the three sentencing options available under § 3593 of the federal death penalty provisions rather than limiting the instructions to the two sentencing options available under § 1201, the substantive criminal statute for which the defendant was convicted. The defendant did not object to the inclusion of the "lesser sentence" option below;

25

therefore, we review for plain error.[10]  *See Flores*, 63 F.3d at 1374.

We must first determine whether the district court committed error by instructing the jury of the sentencing options available under § 3593, rather than limiting the instructions to the two sentencing options which existed under the substantive criminal statute.  *See Olano,* 507 U.S. at 732-33.  If any error occurred regarding the available sentencing options, the error was caused by the disparate sentencing options provided for in the Federal Kidnapping statute, 18 U.S.C. § 1201, and the Federal Death Penalty Act, 18 U.S.C. § 3593(e)(3).  Under § 1201, a defendant convicted of kidnapping with the death of the victim resulting shall be punished by death or life imprisonment.  *See* 18 U.S.C. § 1201. Under the federal death penalty provisions, however, the jury may recommend that the court sentence the defendant to death, to life imprisonment without the possibility of release, or some other lesser sentence, upon the unanimous recommendation of the jury. *See* 18 U.S.C. § 3593(e).

The defendant argues that the language of the kidnapping

---

[10] At the charge conference, and in written objections, the defendant objected to the court's refusal to include the language "rather than a sentence of life imprisonment without the possibility of release or a lesser sentence" whenever the instructions referred to the jury's responsibility to determine whether the defendant should be sentenced to death.  If the district court had actually used the defendant's requested instruction, then we would review under the invited error doctrine. *See United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir. 1991).  The district court, however, did not use the defendant's requested language.  Furthermore, the defendant did not object to other references in the instructions to the "lesser sentence" option.  Consequently, we review for plain error.

statute clearly limits the possible sentences to death or life imprisonment. Moreover, the defendant argues that the term "life imprisonment" in the kidnapping statute actually means life without the possibility of release because parole no longer exists in the federal system. Thus, the jury actually had only two sentencing options--death or life without the possibility of release. Conversely, the government argues that the jury in fact had three options because Congress distinguishes between "life" and "life without the possibility of release." The government raises § 3594 as an example of the qualitative difference between life and life without the possibility of release. Section 3594 states that if the jury recommends a lesser sentence, then "the court shall impose any lesser sentence that is authorized by law . . . . if the maximum term of imprisonment is life imprisonment, the court may impose a sentence of life imprisonment without the possibility of release." 18 U.S.C. § 3594. Thus, the government argues that the jury in fact had the option of recommending death, life without the possibility of release, or a lesser sentence, but the district court was obligated to impose life without the possibility of release as the only "lesser sentence" authorized by law.

In deciding whether the FDPA or § 1201 provides the appropriate sentencing options, we must first determine what effect the death penalty scheme has on the substantive criminal law. The FDPA acts like a sentence enhancement provision in that it does not add to or otherwise affect the penalties available under the substantive criminal statutes. *See United States v. Branch*, 91

27

F.3d 699, 738-40 (5th Cir. 1996)(holding that 18 U.S.C. § 924(c) does not create separate offense). Although the FDPA does not function exactly as a sentence enhancement provision, we will utilize the sentence enhancement analysis in order to determine the effect of the death penalty provisions on the substantive criminal law. In determining whether a statute creates a separate offense or is merely a sentence enhancement provision, the court has suggested the following four factors: (1) whether the statute predicates punishment upon conviction under another section; (2) whether the statute multiplies the penalty received under another section; (3) whether the statute provides guidelines for the sentencing hearing; and (4) whether the statute is titled as a sentencing provision. *Id.* at 738 (citing *United States v. Jackson*, 891 F.2d 1151, 1152 (5th Cir. 1989)). These factors complement traditional tools of statutory interpretation, namely, the text and legislative history. *Id.* at 738. As with the sentence enhancement provisions applicable to the use of a firearm during the commission of a drug crime, the FDPA does not create a separate and independent offense, but depends upon a conviction under another section. *See Branch,* 91 F.3d at 738. Additionally, the death penalty statute merely provides guidelines and procedures for the sentencing hearing. Nothing in the text or legislative history indicates that Congress intended to create new, separate offenses under the death penalty scheme.[11]

---

[11] The legislative history also supports a holding that § 3593 was intended to create procedures for imposing the death penalty rather than create additional substantive crimes. *See* House Report No. 103-467, 103rd

28

Although all three sentencing options were available to the jury under § 3593, the defendant could only receive death or life imprisonment under § 1201, the substantive criminal statute for which Jones was convicted. Contrary to the government's assertion, no meaningful distinction exists between "life" and "life without the possibility of release." Thus, had the jury recommended some lesser sentence, the court would have been obligated to impose life without the possibility of release as the only authorized lesser sentence. Because the substantive criminal statute takes precedence over the death penalty sentencing provisions, the district court should have instructed the jury of the sentencing options available under § 1201. Consequently, the district court committed error by informing the jury of the lesser sentence option available under § 3593.

After determining that error occurred, we must next determine whether the error was clear or obvious error under current law. *See Olano*, 507 U.S. at 734; *Dupre*, 117 F.3d at 817. Prior to this appeal, the death penalty sentencing provisions under which Jones was sentenced had never been reviewed on appeal. No clearly established law answered the question of whether § 3593 or the substantive criminal statute under which the defendant is convicted provides the correct sentencing options. The error was not so obvious, clear, readily apparent, or conspicuous that the judge was derelict by not recognizing the error. Consequently, we hold that

Cong., 2d Sess. (1994).

instructing the jury as to the sentencing options available under § 3593 was not plain error.

## IV. Statutory Aggravating Factors

The defendant argues that the district court committed reversible error by submitting statutory aggravating factors to the jury which failed genuinely to narrow or channel the jury's discretion. The government submitted four statutory aggravating factors to the jury during the penalty phase of the trial. The jury made unanimous findings regarding two statutory aggravating factors.

## A.

Jones argues that the inclusion of statutory aggravating factor 2(A), which merely repeated the elements of the crime, did nothing to narrow the jury's discretion, and thus, violated the Eighth Amendment. Statutory aggravating factor 2(A), based on § 3592(c)(1), provides: "The defendant Louis Jones caused the death of Tracie Joy McBride, or injury resulting in the death of Tracie Joy McBride, which occurred during the commission of the offense of Kidnapping."

As stated previously, a capital sentencing scheme must genuinely narrow the class of persons eligible for the death penalty. *Zant v. Stephens*, 462 U.S. 862, 877 (1983). The use of aggravating factors helps to narrow the class of death-eligible persons and thereby channels the jury's discretion. *See Lowenfield*

30

*v. Phelps*, 484 U.S. 231, 244 (1987). An aggravating factor which merely repeats an element of the crime passes constitutional muster as long as it narrows the jury's discretion. *See id.* at 246. In *Lowenfield*, the Court held that the constitutionally required narrowing function in a capital punishment regime could be performed in either of two ways: "The legislature may itself narrow the definition of capital offenses, . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield*, 484 U.S. at 246. Thus, the requisite narrowing can be done at either the guilt or penalty phase of trial.

The FDPA channels the jury's discretion during the penalty phase to ensure that the death penalty is not arbitrarily imposed. The federal death penalty regime establishes the class of persons eligible for the death penalty through its definition of capital offenses, to include only treason, espionage, and certain intentional killings. *See* 18 U.S.C. § 3591. Although the federal death penalty regime defines capital offenses, the narrowing function does not occur until the penalty phase of the trial. In narrowing the jury's discretion in federal homicide prosecutions, the FDPA requires the jury first to find that the defendant had the requisite intent. 18 U.S.C. § 3591. The FDPA further narrows the jury's discretion with the requirement the jury find at least one statutory aggravating factor prior to recommending the death penalty. *See* 18 U.S.C. § 3592(c). Thus, the FDPA narrows the

31

jury's discretion through the findings of intent and aggravating factors. Repetition of the elements of the crime as an aggravating factor helps to channel the jury's discretion by allowing the jury to consider the circumstances of the crime when deciding the propriety of the death sentence. The jury may constitutionally consider the circumstances of the crime when deciding whether to impose the death penalty. *See Tuilaepa v. California*, 512 U.S. 967, 976 (1994).

The narrowing function was not performed at the guilt phase when the jury convicted Jones of kidnapping with death resulting, but at the penalty phase when the jury found Jones intentionally killed McBride and two statutory aggravating factors existed. Although the jury had already found the defendant guilty of kidnapping with death resulting at the guilt phase of the trial, the jury did not consider whether Jones caused the death of the victim during the commission of the crime of kidnapping until the penalty phase of the trial. The jury could have convicted Jones of kidnapping with death resulting in the guilt phase of the trial and still answered "no" to statutory aggravating factor 2(A) in the penalty phase if the jury found that Jones did not cause the death of the victim during the commission of the crime of kidnapping. The submission of the elements of the crime as an aggravating factor merely allowed the jury to consider the circumstances of the crime when deciding whether to impose the death penalty. Thus, the kidnapping was weighed only once by the jury during the penalty phase of the trial. Consequently, the repetition of the elements

32

of the crime as an aggravating factor did not contradict the constitutional requirement that aggravating factors genuinely narrow the jury's discretion.

### B.

Jones contends that the district court committed reversible error by allowing statutory aggravating factor 2(C). Statutory factor 2(C), based on § 3592(c)(6), provides: "The defendant Louis Jones committed the offense in an especially heinous, cruel, and depraved manner in that it involved torture or serious physical abuse to Tracie Joy McBride." Jones argues that the language used in aggravating factor 2(C) was unconstitutionally vague, resulting in the arbitrary imposition of the death penalty in violation of the Eighth Amendment. As the Supreme Court stated in *Maynard v. Cartwright*:

> Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia.*

*Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988) (citation omitted). Due to the difficulty in precisely defining aggravating factors, however, "our vagueness review is quite deferential." *United States v. Flores*, 63 F.3d 1342, 1373 (5th Cir. 1995) (quoting *Tuilaepa v. California*, 512 U.S. 967, 975 (1994)). Consequently, an aggravating factor will be upheld as long as it has some "common-sense core meaning . . . that criminal juries

33

should be capable of understanding." *Id.*

The language "especially heinous, cruel, and depraved" without a limiting instruction would be unconstitutionally vague. *See Maynard v. Cartwright*, 486 U.S. at 364; *King v. Puckett*, 1 F.3d 280, 284 (5th Cir. 1993). Any vagueness in the language, however, is cured by the limitation in the statute that the offense involve torture or serious physical abuse. *See Walton v. Arizona*, 497 U.S. 639, 654-55 (1990) (citing *Maynard v. Cartwright*, 486 U.S. at 364-65). Moreover, the district court defined each term in aggravating factor 2(C) which resolved any possible vagueness or ambiguity of the language.[12] The statutory limitation, along with the district

---

[12] The district court gave the following limiting instruction to explain statutory aggravating factor 2(C):

To establish that the defendant killed the victim in an especially heinous, cruel, or depraved manner, the government must prove that the killing involved either torture <u>or</u> serious physical abuse to the victim. The terms "heinous, cruel, or depraved" are stated in the disjunctive: any one of them individually may constitute an aggravating circumstance warranting imposition of the death penalty.

"Heinous" means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as set apart from other killings.

"Cruel" means that the defendant intended to inflict a high degree of pain by torturing the victim in addition to killing the victim.

"Depraved" means that the defendant relished the killing or showed indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim.

"Torture" includes mental as well as physical abuse of the victim. In either case, the victim must have been conscious of the abuse at the time it was inflicted; and the defendant must have specifically intended to inflict severe mental or physical pain or suffering upon the victim, apart from killing the victim.

"Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty. Serious physical abuse--unlike torture--may be inflicted either before or after death and does not require that the victim

34

court's instruction, gave the jury an aggravating factor with a "common-sense core meaning" that they were capable of understanding. Thus, the language of statutory aggravating factor 2(C) was not unconstitutionally vague and did not lead to the arbitrary imposition of the death penalty in violation of the Eighth Amendment.


V.  Non-statutory Aggravating Factors

Jones argues that the death sentence must be reversed because the nonstatutory aggravating factors considered by the jury were unconstitutionally vague, overbroad, and duplicative. After giving the appropriate notice required by § 3593(a), the government submitted the following nonstatutory aggravating factors:

> 3(A). The defendant constitutes a future danger to the lives and safety of other persons as evidenced by specific acts of violence by the defendant Louis Jones.
>
> 3(B). Tracie Joy McBride's young age, her slight stature, her background, and her unfamiliarity with San Angelo, Texas.
>
> 3(C). Tracie Joy McBride's personal characteristics and the effect of the instant offense on Tracie Joy McBride's family constitute an aggravating factor of the offense.

The jury unanimously found nonstatutory aggravating factor 3(B) and

---

be conscious of the abuse at the time it was inflicted. However, the defendant must have specifically intended the abuse apart from the killing.

Pertinent factors in determining whether a killing was especially heinous, cruel, or depraved include: infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; needless mutilation of the victim's body; senselessness of the killing; and helplessness of the victim.

The word "especially" should be given its ordinary, everyday meaning of being highly or unusually great, distinctive, peculiar, particular, or significant.

35

3(C) to exist beyond a reasonable doubt.

The government contends that factors 3(B) and 3(C) apply to entirely different areas of aggravation--3(B) applies to McBride's vulnerability, while 3(C) applies to "victim impact" or the impact of the murder on McBride's family. Although the use of vulnerability and victim impact evidence has been upheld on appeal, the language used in 3(B) and 3(C) does not accomplish this goal. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (victim impact); *Tuilaepa*, 512 U.S. at 977 (vulnerability through age of victim). The plain meaning of the term "personal characteristics," used in 3(C), necessarily includes "young age, slight stature, background, and unfamiliarity," which the jury was asked to consider in 3(B). Thus, nonstatutory aggravating factors 3(B) and 3(C) are duplicative. As the Tenth Circuit recently stated, "Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir. 1996). We agree. Such double-counting of aggravating factors creates the risk of an arbitrary death sentence. If the jury has been asked to weigh the same aggravating factor twice, the appellate court cannot assume that "it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer v. Black*, 503 U.S. 222, 232 (1992). Consequently, the district court erred by submitting the duplicative aggravating factors to the jury.

Additionally, the defendant contends that the nonstatutory aggravating factors are vague and overbroad, in violation of the Eighth Amendment. *See Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988). We agree. Non-statutory aggravating factors 3(B) and 3(C) fail to guide the jury's discretion, or distinguish this murder from any other murder. We fail to see how the victim's "background," her "personal characteristics," or her "unfamiliarity with San Angelo" made the defendant more death-worthy than other murderers. Furthermore, the district court offered no additional instructions to clarify the meaning of the non-statutory aggravating factors. The use of the terms "background," "personal characteristics," and "unfamiliarity" without further definition or instruction left the jury with "the kind of open-ended discretion which was held invalid in *Furman v. Georgia*." *See Maynard*, 486 U.S. at 361-62 (1988). Consequently, aggravating factors 3(B) and 3(C) were invalid.

After determining that the non-statutory aggravating factors submitted to the jury were invalid, we must next determine whether the death sentence may stand. The Federal Death Penalty Act sets up a weighing scheme in which the jury is asked to weigh any aggravating factors found to exist beyond a reasonable doubt against any mitigating factors found to exist by a preponderance of the evidence. If the aggravating factors outweigh the mitigating evidence, then the jury may recommend the death penalty. In a weighing scheme, aggravating factors lie at the very heart of the

37

jury's ultimate decision to impose a death sentence.[13]  *See Stringer,* 503 U.S. at 230.  Under a weighing statute, affirming a death sentence when an aggravating factor has been found invalid requires the appellate court to scrutinize the role which the invalid aggravating factor played in the sentencing process in order to comply with the Eighth Amendment requirement of individualized sentencing determinations in death penalty cases.  *See Stringer*, 503 U.S. at 230.  A rule automatically affirming a death sentence in a weighing scheme as long as one aggravating factor remained would violate the requirement of individualized sentencing.  *See Clemons v. Mississippi*, 494 U.S. 738, 752 (1990)(citing *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982)).  When the jury considers an invalid aggravating factor at the sentencing hearing, the appellate court must strike the invalid factor and then either reweigh the remaining aggravating factors against the mitigating evidence or apply harmless error review.  *See Clemons v. Mississippi*, 494 U.S. 738, 741 (1990); *Wiley v. Puckett*, 969 F.2d 86, 92 (5th Cir. 1992).

If the appellate court chooses to reweigh the remaining aggravating factors against the mitigating evidence, the court must determine what the jury would have done absent the invalid aggravating factor.  *See Stringer,* 503 U.S. at 230.  On the other

---

[13] In non-weighing statutes, the jury must find the existence of one aggravating factor before imposing the death penalty, but such factors play no additional role in the jury's determination of whether a defendant eligible for the death penalty should receive it under the circumstances of the case.  *See Stringer v. Black*, 503 U.S. 222, 229-30 (1992) (discussing the Georgia non-weighing death penalty statute at issue in *Zant v. Stephens*, 462 U.S. 862 (1983)).

hand, if the appellate court chooses to apply harmless error review, then the harmless error analysis can be applied in the following two ways: First, the appellate court may inquire into whether, beyond a reasonable doubt, the death sentence would have been imposed had the invalid aggravating factor been properly defined in the jury instructions. *See Clemons,* 494 U.S. at 754; *Wiley*, 969 F.2d at 92-93. Second, the appellate court may inquire into whether, beyond a reasonable doubt, the death sentence would have been imposed absent the invalid aggravating factor. *See Clemons*, 494 U.S. at 753; *Wiley*, 969 F.2d at 91. If the government establishes that an error regarding aggravating factors is harmless beyond a reasonable doubt, then the appellate court may not reverse or vacate the death sentence, unless of course such error rises to the level of a denial of constitutional rights. *See* 18 U.S.C. § 3595.

At this point, the appellate court may either reweigh the aggravating and mitigating evidence or apply one of the methods of harmless error review. *See Wiley*, 969 F.2d at 92. It matters not which standard of review an appellate court chooses to apply because all three standards lead to the same conclusion. If a death sentence would be overturned under harmless error review, then the death sentence would be overturned after reweighing, and vice versa. The government asserts that we must apply the harmless error standard. Although the statute provides that an appellate court "shall not reverse or vacate a sentence of death on account of any error which can be harmless," 18 U.S.C. § 3595(c), the

39

statute does not establish a standard of review. Therefore, an appellate court can choose to apply any of the available forms of review as long as the defendant receives an individual determination of the propriety of his death sentence.

In affirming the defendant's death sentence, we apply the second method of harmless error review. In applying the second method of harmless error review, an appellate court must inquire into whether, beyond a reasonable doubt, the death sentence would have been imposed absent the invalid aggravating factors. *See Clemons*, 494 U.S. at 753; *Wiley*, 969 F.2d at 91. This second form of harmless error review requires the appellate court to redact the invalid aggravating factors and "reconsider the entire mix of aggravating and mitigating circumstances presented to the jury." *See Wiley,* 969 F.2d at 93.

After removing the offensive non-statutory aggravating factors from the balance, we are left with two statutory aggravating factors and eleven mitigating factors to consider when deciding whether, beyond a reasonable doubt, the death sentence would have been imposed had the invalid aggravating factors never been submitted to the jury. At the sentencing hearing, the government placed great emphasis on the two statutory aggravating factors found unanimously by the jury--Jones caused the death of the victim during the commission of the offense of kidnapping; and the offense was committed in an especially heinous, cruel, and depraved manner in that it involved torture or serious physical abuse of the victim. Under part two of the Special Findings Form, if the jury

40

had failed to find that the government proved at least one of the statutory aggravating factors beyond a reasonable doubt, then the deliberations would have ceased leaving the jury powerless to recommend the death penalty. Therefore, the ability of the jury to recommend the death penalty hinged on a finding of a least one statutory aggravating factor. Conversely, jury findings regarding the nonstatutory aggravating factors were not required before the jury could recommend the death penalty. After removing the two nonstatutory aggravating factors from the mix, we conclude that the two remaining statutory aggravating factors unanimously found by the jury support the sentence of death, even after considering the eleven mitigating factors found by one or more jurors. Consequently, the error was harmless because the death sentence would have been imposed beyond a reasonable doubt had the invalid aggravating factors never been submitted to the jury.

## VI. Conclusion

After considering the eighteen issues raised by the appellant on appeal, we conclude that the sentencing provisions of the Federal Death Penalty Act are constitutional and that the defendant's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Consequently, the conviction and the sentence of death is

AFFIRMED.